Thank you. My name is Bart Klein. I am the attorney for Sinait and Negassi-Gabre. And this is a petition for review from a denial of an asylum claim from a decision of the Board of Immigration Appeals dated December 6, 2002. The procedural history on this was that the immigration judge. I'm sorry, I can't hear you. See if you can make the M. Closer. Sorry, Your Honor. Go ahead. The procedural history of this is that the immigration judge made a decision on June 13, 2000, and basically indicated that because of the lack of cooperative evidence from the petitioner's employer in Egypt, that he wasn't going to be granting the case, even though he had told my office and my client that they needed such cooperative evidence to be granted the grant of asylum. We were able to get the statement from the physician and file it as a motion to reopen on the 28th day with the immigration judge. But then on the 29th day, I submitted my appeal to the Board of Immigration Appeals. The decision that came down from the Board of Immigration Appeals denies the asylum for two reasons. One, a discretionary basis, which is the first argument. And the second one is more that there wasn't sufficient cooperative evidence to support a grant of asylum. Now, the discretionary basis upon which it was denied was first brought up in the decision of the Board of Immigration Appeals. It had to do with essentially a firm resettlement argument. And we, as petitioners, never had a chance to respond to that. It basically states that because she had basically safe haven in Egypt, that asylum should be. It's not a firm resettlement argument, as I understand it. It's something else. Well, yes, it's a discretionary basis. And I'm arguing that a safe haven argument is similar to a resettlement argument. And therefore, since there are specific regulations. Did the IJ base his decision on that basis? Not at all. The first time it came up was in this BIA decision. So there are, basically, it's my, it's our position that people who seek safe haven somewhere else, where there's no possibility of firm resettlement, it should be actually a favorable discretionary basis. To be what, I'm sorry? A favorable basis for granting discretion. My understanding is that the IJ found your plan not credible. Is that correct? Not quite, Your Honor. There are four bases where he never made any ruling about credibility. He did state there were about four reasons why maybe it wasn't an objective, reasonable basis for asylum. And therefore, because he did not make any ruling about credibility, he wanted corroborative evidence specifically from this physician that she had been working with in Egypt in order to corroborate her, what happened to her when she returned, what she stated when she returned about being in prison for one year when she went back to Eritrea, about having to bribe the officials in order to get out of Eritrea. He said, I find that there are credibility issues in this case, and to use the words of Mejia, I find that this Petitioner has not persuaded the immigration judge that her testimony is credible. Isn't that a finding that she's not credible? That's true, but he didn't state why she wasn't credible. That's a different issue. Judge Fletcher asked you whether there was a finding that she wasn't credible, and there was one. Well, yeah. I mean, I'm sorry I answered on a legal basis. Yes, he basically found that he wanted corroborative evidence in order to grant the asylum. The CIA didn't make any credibility finding. They referred it to Mejia. He didn't turn to the basis for that. Right, the safe haven argument. And what I am arguing is that what happens with most people who are displaced for whatever reason or for political reason or refugee reasons, that they go to neighboring countries. They're displaced. And it's my argument that people who like staying in, like, neighboring countries like Eritrea, what they do is they usually go to Sudan and sometimes Egypt, because those are the neighboring countries, and try to wait out the situation in their home country, and then they go back and get repatriated if conditions change. Let me just ask you a technical question. Okay. With regard to the motion to reopen, you did not appeal denial of the motion to reopen. Yes, it was part of the appeal. Yes, it was part of the appeal. Well, technically, yes, you're right. But the Board of Immigration Appeals took it as an appeal, Your Honor. If you look at the Board of Immigration Appeals, it says right here at the very end No, I know it's in their opinion. I'm just wondering whether it's before us. All right. Go ahead. You don't know what's the answer. You don't think you know. Well, I handled the entire case. The problem that the immigration judge had is that he said he only had 70 minutes of jurisdiction. And what we're asking, basically, is that this case be remanded back to the board on the whole issue about whether or not safe havens should be an adverse discretionary bid. Well, what we're asking for, basically, is that this case be remanded back to the board, and there's two reasons for that. And the first reason is to be given the opportunity to rebut the safe haven argument, because that's similar to a firm resettlement argument. And it's my opinion that a safe haven argument that they made is a favorable discretion for the grant of asylum, because such people are trying to resolve their conflict with the government in a neighboring country. Now, in Egypt, you're not given an opportunity to firmly resettle. Now, if we were to look at the record made before the IA, and we could see that there was no basis for this discretionary denial, why would we send it back? Well, that goes to the second argument. And the second argument goes to basically the statutory basis. And in this case, it appears that the BIA is assuming that they make no decision on the credibility. In fact, the brief of the Office of Immigration Litigation argues that there's no credibility argument, or that's not at issue right here. It's just whether or not there's sufficient facts that there's reasonable objective fear of persecution. So what I'm saying is that we did provide what the immigration judge wanted, though 28 days late, an affidavit from the specific position with information in there about her claim from that position to the immigration judge. There's some argument, there's a decision saying that there was no reason given why we couldn't get that affidavit. And on her testimony on page 88, she indicated she couldn't get that statement. I prepared the statement for the physician that was part of the motion to reopen his affidavit, but he wouldn't sign it. After the decision of the judge, she was able to get that affidavit. And we convinced the physician to sign it, to send it to us, to get it before the court. And we did get it before the court within the 30 days that the immigration judge had jurisdiction over the case. And what we're asking for is that at least the we'd be given an opportunity to have the Board of Immigration Appeals remand the case back to the immigration judge to consider this affidavit by the physician that he wanted. If you read his decision, it appears that he would be willing to grant asylum in this case if he got this affidavit and he had a chance to adjudicate it. So we're not asking basically the court. The BIA says, and I am not sure that this issue is before us, but the BIA does say that and it's true that the affidavit, even when it came in, didn't discuss the medical treatment that she says she got when she returned from Eritrea. Right. But it discussed everything else, that she was in detention for one month and that she had done. What was he looking for to be corroborated? I mean, it seemed to me that the main thing that he wasn't believing is that he wasn't believing that she was in Egypt all that time. And that she was working for these people. What he was concerned about is whether she had really gone to Eritrea and gotten beaten up and come back and gotten medical treatment. Well, what we're saying is that we've at least provided the affidavit from the physician about what happened to her while she was there. In that affidavit, he also ---- What I'm saying is it does not appear to me that this corroboration was the corroboration they were looking for anyway. I don't know if they were entitled to any corroboration, but it doesn't appear that this corroboration ---- It would have presented the judge with the opportunity at that time since there was a witness with the petitioner for him to call this physician and clear up anything he needed. This judge does call during the earthquake that was happening in Tokyo. I was sitting in ---- I'm sorry? No. This judge will call the persons in other countries to corroborate, to cross-examine witnesses. He's done it many times when I've been in his court. So one time there was an earthquake in Japan, and the next day he wanted testimony from a certain person, and he forced all these operators to track that person down and get that testimony. So what we're saying is that if this gets back before this immigration judge, you know, he will be able to resolve anything he wants, including the medical information. We were able, if you look at the record, with this physician not willing to cooperate, finally get his testimony, at least with partial cooperation, and for us that's a way in. She testified he wasn't willing to help her. That was part of the deal, and that was part of her testimony. So what I'm ---- I'm sorry, Your Honor. I'm over. Thank you. I will give you a minute in rebuttal. Thank you very much. May it please the Court. My name is Anne Tumai. I represent the United States. In answer to your question earlier, Judge Berzon, the only decision before this Court is the Board's denial of asylum. In that regard, there were two grounds for the denial. First, as a matter of statute, that Petitioner Gebrezgeber was not able to satisfy her burden of proving eligibility for asylum. Secondly, the Board determined that, as a matter of discretion, her nine-year stay in Egypt without apparent incident was not a factor that warranted the exercise of discretion. I have several questions about that. Yes, Your Honor. First of all, did the I.J. rely on that? No, Your Honor. All right. So the ---- so why don't we just reverse the BIA for that reason? Because the BIA says that the I.J. exercised its discretion on that basis, and he didn't. Period. Your Honor, if anything, then what the Court could do is, first of all, in terms of the denial of asylum, we have to take a look at the statutory denial first. And if anything, the Court could then remand it back for the exercise of discretion, because what the Board did do was simply say, well, the discretionary factor further supported the denial, the ultimate denial. It said that the I.J. exercised its discretion on that basis, and he did not. No, no. The I.J. did not make any discretionary finding. The I.J. simply made a determination that Petitioner was not eligible for asylum. The Board made a determination and agreed that there was no asylum eligibility. Where does this ---- there is a statutory provision with regard to firm resettlement. This doesn't meet that criteria. Is that correct? Your Honor, there was no finding as to firm resettlement, and the ---- The Board didn't say it did. Not with respect to permanent resettlement. The court law here states that her 9-year stay would allow for a presumption of firm resettlement, but there was no actual finding of permanent resettlement here. If anything, there was only a discretionary finding of safe haven, and it's only a factor. Where is that in the statute or the regulations? Your Honor, there used to be a regulation that dealt with discretionary findings of ineligibility for asylum. Right. But that regulation that this Court did address in the Andrea Asian case does not ---- I could not find it. Quite frankly, Your Honor, if anything ---- It's not there anymore. Yes, Your Honor. So, therefore, where is the authority to essentially take ---- there is a statutory provision. It has certain criteria. Now, what they seem to be ---- what the BIA seems to have done here is without saying that those criteria, i.e., the firm resettlement criteria were met, created another category and said that that's a basis for denying asylum. Your Honor, let me first point out that there's no specific statutory or regulatory authority delineating what discretionary factors go into a denial of asylum. So in terms of the exercise of discretion, there's a lot of different factors that the Board may consider. And what the Board considered in this particular case was the very fact that she was able to stay in Egypt for nine years. And this Court has even said ---- But illegally. I'm sorry? Illegally. Not during the whole time, Your Honor. Petitioner even admitted that she had been ---- she had arrived in the U.S. with her employer on a visa, a visitor's visa, and that she could have returned to Egypt with her employer at that time. But not legally worked. She was working in Egypt illegally the whole time she was there is what she said. That is what she had claimed, Your Honor. Yes. Counsel, usually the cases where we're thinking about exercise of discretion happen after we have determined this eligibility. So this is a very odd way for the BIA to get into this. Let's get back to the IJ and what his reasons were for finding her incredible. It seems to me that they were all kind of suppositions as to what a government would do, and none of them really related to a challenge to her truthfulness. Your Honor, quite frankly, the IJ's adverse credibility finding is not before the Court because the Board did not make a specific finding of credibility. Under the Ninth Circuit's law, then we have to then assume that her credibility is assumed. However, this Court has also said that credible testimony alone is not necessarily sufficient to satisfy the burden of proof. In fact, under the regulation at 8 CFR 208.13, it states that credible testimony may satisfy the burden of proof, but that may work in the case that there are circumstances when credible testimony cannot. But you really have to have some basis for finding the individual to be not credible. If we were to believe what she said, certainly she would be entitled to asylum. Not necessarily, Your Honor. Not in this case. We're looking at the record, and you're looking at the record. Tell me on what basis you could find that she would not be entitled to asylum if she were believed. Your Honor, if Your Honor looks at the record citations in the Petitioner's brief at pages 21 to 22, there are a number of inconsistencies in her arguments or at least in some of her statements within her own testimony as well as being believed. I'm sorry, Your Honor? You're saying that you should not believe her, then? Yes, Your Honor. Well, at best, Your Honor, I'm saying that her testimony was weak and insufficient to satisfy her burden of proof. Under this Court's decision in Citu v. INS, the Court has said that or completely rejected the argument that the failure to corroborate evidence is not required when it's readily available. And it also indicates that the testimony — Your Honor, I'm sorry. If you — what I understand Citu to say and what maybe the Board was saying in this is if you're sort of an equipoise on a credibility determination, you can't quite figure out if the person is credible or not credible, then you can rely on the failure to corroborate to tip the burden towards lack of credibility, right? But here, your understanding is that we are to take this case on the basis that she was found credible. Yes, Your Honor. However — If she was found credible, why was the Board looking for corroboration? Corroboration of what? As Judge Fletcher says, if you believed what she said, why do you need any corroboration? Because we're not quite certain what happened to her. Because in this case, there's at least six problems. She said what happened to her, and we either believe her or we don't believe her. She says she went back to Eritrea and she was put in prison and beaten for a month. She also said that she had no problem receiving her passport from the Eritrean government, that she has no problem receiving — You're making a credibility. You're saying because of these other things, you tend not to believe her story that she was in prison for a month and was beaten. But if you do believe that she was in prison for a month and was beaten, wouldn't she be entitled to asylum? Your Honor, unfortunately, that's the problem that we have when there's no specific Board finding as to credibility, but we have this case law that says that we have to presume that there's a credibility finding. But the thing is, we also have to keep into account the regulations that suggest that credible testimony alone is not sufficient to satisfy the burden of proof. And here we have a case — I'm having a great deal of difficulty. Why isn't the burden of proof satisfied if we believe that she was put in prison and beaten for a month? Because we also have to believe, then, that the Eritrean government didn't necessarily target her for any kind of reason when the Eritrean government also gave her a passport without any problem, gave her travel documents without any problem, gave her a passport without any problem, and then gave her the Eritrean  And when we look at the testimony of the individual who allowed — who initially she claimed had not let her exit or given her some problems exiting Eritrea, then allowed her to exit a couple of days later, it seems almost as if her testimony and the evidence she's provided now state that, well, even if she was beaten, the gap in the evidence is with regard to the reason for why she was treated this way, not whether she was treated this way. Correct, Your Honor, because what we have, if anything, is if we assume the credibility, then she had this problem where she was beaten and there's some — she had problems with regard to it. But then we have to then consider, well, even if there's persecution, is it on account of a will? Can we go back to the other issue about the discretionary denial?  Well, first of all, I gather you regard these as alternative rulings by the BIA? Well, Your — yes, Your Honor, because you require both in order to obtain asylum. The first — I had the same reaction to Judge Fletcher, although I've had it in a few recent cases in general. I've always understood that first there's an eligibility determination made with regard to asylum. There's then an appeal on that, and to us. And if we decide — if we grant a petition with regard to asylum and then goes back for just this exercise of discretion, is that basically the way things usually operate? Things operate in that regard, but as this Court has also done in different cases, and especially with jurisdictional matters, for example, you can find alternative findings. You don't necessarily have to — there is usually — I don't know specifically whether the exercise of discretion occur by the IJ or by the BIA occurs in advance of an eligibility determination. That seems to be what's going on here. In other words, the BIA essentially never made an eligibility determination. It said whether — assuming eligibility, we would deny it for the discretionary reason. Your Honor, the BIA made both findings, because the BIA said that the petitioner had not provided sufficient evidence. In the third paragraph of the Board's decision, the Board then goes into and relies on the IJ's findings with regard to the testimony being insufficient to satisfy her burden of proof. And that was why she also should have provided corroborating evidence, and especially evidence that she said she had — she could have obtained, and also that she never even bothered to attempt to obtain with regard to her uncle's statement, even though the IJ gave her a continuance in order to do so. When we take a look at this case, we have to remember that there's two different grounds for denial, and there's two different types of standards of review associated with those grounds of denial. The first one is that there's a statutory denial, such that the court has to consider whether the evidence compels a finding that she's eligible. It doesn't here. Secondly, as far as the discretionary factor, we have to consider whether or not there's an abuse of discretion in finding that this one factor, her staying in Egypt, is something that the Board should not have considered. It's a discretionary factor. The Board did not abuse its discretion in also saying that the denial was appropriate, especially where here there's no harm if she were to stay in Egypt, even if she could not necessarily work. There's no evidence that she's proffered that shows that her employee could not necessarily have helped her out further. In that regard, the government states that the Board's decision should be affirmed. Thank you very much. Thank you for your argument. Can you give him one minute? Thank you. Yes, Your Honor. You had a question about whether or not the decision of the immigration judge on the motion to reopen was before this Court. The judge didn't make a decision. He just said he had no idea. The BIA's decision on the motion to reopen. I submitted a motion to reopen to the judge with the new affidavit. The BIA made a decision. My understanding of what happens is that motion then gets transferred to the BIA, and the BIA did rule on it. That's right. So it's before this Court. I'm not sure that's right. Well, if you look at page 34 where the judge made his decision, he just said, I didn't have time to make the decision. I understand that part. So I just want to be clear on that. The second issue is that I would just like to reemphasize that the BIA, by claiming that safe haven is an adverse discretionary factor, again, in my opinion, is a favorable factor in granting discretion, because some of the ---- Discretion is the problem. Decide which one it is, unless it's an abuse of discretion. That's right. Thank you. Okay. Thank you very much. This case is submitted, and the next case, United States v. La Mer, has been submitted on the brief, so we will go on to United States v. St. Germain. Thank you.
judges: B. Fletcher, Hamilton , Berzon